## No. 3246

### Second Circuit

---

## SADLER v. LOUISIANA CENTRAL LUMBER CO.

---

(May  22, 1928.   Opinion and Decree.)
(June  28, 1928.   Rehearing Refused.)

---

(*Syllabus by the Court*)

1.  **Louisiana Digest—Master and Servant —Par. 159.**

An employee sustained a fracture of both bones of his left arm between the wrist and the elbow. The bones were properly set and the fractures duly healed and the arm was as good as before. The employee returned to work with his arm in a sling on the Monday following the Saturday on which he was injured and worked every day until the following Thursday when he quit. While he was at work he was paid his regular wages. He did not work thereafter for two months and five days, during which he was paid .65% of his wages as for temporary total disability. Thereupon he again returned to work and continued at it steadily for eleven months, during which he was paid full regular wages. He then voluntarily gave up his employment and went else-

where and was there employed at the same kind of work at a higher wage than he had been receiving.

Held: That the employee was not entitled to any further compensation under the Employers' Liability Act.

Appeal from the Eighth Judicial District Court, Parish of Caldwell. Hon. F. E. Jones, Judge.

Action by Sherman Sadler against Louisiana Central Lumber Co.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Julius T. Long, of Shreveport, attorney for plaintiff, appellant.

Thornton, Gist and Richey, of Alexandria, attorneys for defendant, appellee.

REYNOLDS, J. Plaintiff, Sherman Sadler, seeks judgment against defendant, Louisiana Central Lumber Company, under the Workmen's Compensation Act, for $12.87 for 300 weeks, beginning April 10, 1926, with legal interest on each payment from its maturity until paid.

He alleges that in an accident growing out of and in the course of his employment—

"* * * he was severely and permanently injured in his body in many ways, particularly in his left arm, which was broken in both bones near his wrist; that * * * his spine and nerves have been seriously and permanently impaired, as well as his heart and lungs; that the nerves, muscles, ligaments, bones and tissues of his said arm were * * * seriously and permanently injured and impaired; and that on account of said injuries and impairments aforesaid he has not been able to do any work of any reasonable character since he was injured and will probably not hereafter be able to do such work.

"That soon after he was thus injured the said company became aware of the time, cause, nature and extent of his in-

juries, and within a week from then commenced to pay him weekly compensation at about the amount demanded herein per week, up until about June 10, 1926, to about the aggregate of ninety-two and 50-100 dollars, but has since that quit paying him any more, and refuses to pay him any more, and now contends that it was never liable or responsible to him for any weekly compensation."

He further alleges that he has contracted with his attorney to pay the latter one-third of whatever may be awarded him in the action, and that Act No. 85 of 1926 in that it limits his attorney to twenty per cent of whatever may be recovered in the action is unconstitutional and void.

He prays judgment against defendant for $12.87 per week for 300 weeks, beginning April 10, 1926, with legal interest on each weekly payment from its maturity until paid, that the fee of his attorney be fixed at one-third of the amount of the judgment and that Act No. 85 of 1926 be declared unconstitutional and void.

Defendant denied the allegations of plaintiffs' petition and alleged:

That plaintiff, while employed in the capacity of section foreman by it, was thrown off a hand-car

"* * * as a result of which accident petitioner sustained a simple fracture of both bones of his left arm at about half way between the wrist and the elbow, together with such injury to the muscles and tissues of the said arm as usually occur in a simple fracture of the bones of an arm.

"That on account of said injuries it paid petitioner compensation of $12.87 a week or a total compensation of $124.41, after which date it ceased to pay petitioner any further compensation for the reason that he had recovered from the incapacity which he suffered as a result of said injury and was able to and did resume the same nature of work which he was doing prior to the date of his injury and has worked

continuously at the same job at which he was employed at the time of his injury, from June 17, 1926, up until a short time before this suit was filed, when petitioner quit work and resigned of his own accord.

"That the compensation which was paid petitioner was sixty-five per cent of his daily wages of $3.30 per day, the maximum compensation under law; that said compensation was paid to petitioner from the date of the injury up to the date he returned to the same job at which he was employed prior to the date of his injury, and that on and after June 16, 1926, petitioner was in no manner incapacitated * * * on account of said accidental injury sustained on or about April 10, 1926."

On these issues the case was tried and there was judgment rejecting plaintiff's demand and dismissing his suit and he has appealed. .

Plaintiff testified:

"Q. You have alleged that you received certain injuries on April 10, 1926, while working for the Louisiana Central Lumber Company at a certain amount per day. What was the amount of your wages?

"A. Three dollars and thirty cents a day.

"Q. What day were you hurt on?

"A. April 10, 1926.

"Q. How much compensation have you been paid by the Louisiana Central Lumber Company since your injury?

"A. Two months and five days. I don't remember the amount.

"Q. How much was that per week, if you remember?

"A. $12.87 per week, I suppose.

*   *   *

"Q. How long after you received this fall, before you attempted to do any labor?

"A. You mean in my line of business?

"Q. Yes?

"A. I had my arm broken on Saturday and on Monday I went out with my arm in a sling and I stayed on the job until Thursday, the 15th, I came back out and stayed off for two months after that the doctor taken my arm out of the sling. I didn't do any labor then but I went back on the job and stood around and told them what to do and was helped on and off the train.

*   *   *

"Q. You say you were off two months as a result of this accident?

"A. Yes, sir.

"Q. What did you do when you went back to work?

"A. I went out there and stood over the gang and instructed them what to do.

"Q. How much money did you get?

"A. $3.30 a day.

"Q. You continued in that employment at $3.30 a day for how long?

"A. Eleven months.

"Q. Then what did you do?

"A. I quit, to sue the company.

"Q. Why did you quit?

"A. I quit to sue the company, because I understood that after a year you couldn't sue them, and I quit to sue them before I was put out.

"Q. You felt like you couldn't work for the company and sue them too?

"A. I didn't think I could.

"Q. What did you do after that?

"A. I sat down to see what would happen.

"Q. You quit your job with the company at $3.30 a day and sat down and did nothing, at nothing a day, to wait and see what would happen? Why did you do that?

"A. In order to get what was rightfully mine. I hadn't got it and I wanted it because I thought it was rightfully mine.

"Q. You quit your job with the company at $3.30 a day and did nothing at nothing a day in order to get sixty-five per cent of $3.30 a day?

"A. Not that exactly, but I have been sawmilling a long time and I knew that after I had passed this time they could have fired me and then I couldn't have sued them and couldn't get anything.

"Q. Didn't you go out to Texas and get a job?

"A. Yes, sir; I was out there twenty-one days. I stayed out there until I was called into Shreveport for an examination.

"Q. You quit working out there to go to Shreveport for an examination and come over here for the trial of this case?

"A. Yes, sir.

*   *   *

"Q. Nobody threatened to fire you, did they?

"A. No, sir; I haven't anything against the company whatever. I just want what is rightfully belonging to me.

"Q. So far as you know, you can go back to Texas and get the job you left out there?

"A. So far as I know.

"Q. Your work was giving satisfaction, wasn't it?

"A. I do that wherever I go, but you don't know how long it is going to last. The fact is, when a man's hair begins to get gray they push him out and put a young man in, if he is a little disabled, and you can't get anything to do * * *

"Q. What doctor treated you the eleven months you worked down there after the accident?

"A. I had no doctor, except while I was injured.

"Q. All these pains you speak about having now, you never mentioned that to Doctor Hines, did you?

"A. No, sir; I did not mention it to anyone; a man's troubles are his own, and people don't care to hear about the other fellow's troubles.

"Q. You have suffered in silence for the past two years, said nothing to anybody, took no medicine and saw no doctors?

"A. I didn't complain at all.

"Q. You haven't visited a doctor, except for going for an examination after you filed suit, since the accident?

"A. No, sir; I had no occasion to.

"Q. Now, when you went to Doctor Hines for him to dress your arm, you didn't tell him about hurting your leg or back, did you?

"A. No, sir; my arm was the worst thing I had, and I made no further complaints. My arm hurt me so bad that I didn't know my leg was hurt for a month.

"Q. You say you didn't know your leg was hurt for a month?

"A. No, sir; my back and arm hurt me so bad I couldn't tell whether anything else hurt me or not, and after they ceased paining me I found that my leg was hurt too * * *

"Q. What were you doing in Texas?

"A. Same kind of work I was doing here.

"Q. What did they pay you out there?

"A. $4.00 a day."

Plaintiff's own testimony shows that he was entirely cured of his disability and that while it lasted he was paid full compensation by defendant, and that since plaintiff ceased to pay him compensation, or almost a year, he has been at work doing the same kind of labor that he was performing at the time of and for years prior to his injury. Most of the time since defendant ceased to pay him compensation he has been doing the same kind of work for and receiving the same daily wage from defendant as before his injury and part of the time he has been doing the same kind of work for another at a higher wage than defendant was paying him.

The trial court, which heard the witnesses testify and observed their demeanor on the witness stand, was of the opinion that plaintiff's disability ceased when defendant ceased to pay him compensation, that defendant had paid him full compensation during the period of his disability, and that he was not entitled to receive anything further from defendant, and rejected plaintiff's demand and dismissed his suit. We concur in this conclusion.

This view of the case renders it unnecessary for us to consider plaintiff's contention that Act No. 85 of 1926 is unconstitutional and void.

For the reasons assigned, the judgment appealed from is affirmed.